UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-23523-CIV-SEITZ/O'SULLIVAN

THE MICCOSUKEE TRIBE OF INDIANS
OF FLORIDA, a federally-recognized
Indian Tribe,

        Plaintiff,

v.

UNITED STATES OF AMERICA, U.S. DEPARTMENT
OF INTERIOR, NATIONAL PARK SERVICE, KEN
SALAZAR, Secretary, U.S. Department of Interior,
in his official capacity, and JOHN JARVIS, Director,
National Park Service, in her official capacity,

        Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS FOR MOOTNESS AND CLOSING CASE

THIS MATTER is before the Court on the Government's Motion to Dismiss for Mootness [DE 94]. The Tribe brought this action to enjoin commencement of the Loop Road Rehabilitation Project ("Project") until the National Park Service ("NPS") conducted an environmental assessment as required by the National Environmental Policy Act ("NEPA"). After the Court advised the parties of its intention to rule against the NPS on the merits of the Tribe's NEPA claim, see DE 92, the NPS agreed to conduct NEPA review and halted the Project until the review was complete. (*See* DE 94, Ex. 1 "Ramos Decl." ¶ 3.) As a result, the NPS moves to dismiss this action for want of an Article III "case or controversy." The Tribe opposes dismissal, arguing that the NPS has not taken any concrete steps toward NEPA compliance and therefore has not shown grounds for dismissal for mootness.

After reviewing the motion, the response and reply thereto, the record, and the relevant law, the Court will grant the motion because, by voluntarily halting the Project's commencement and committing to perform NEPA review, the Tribe has obtained the relief it is seeking and this Court cannot grant any greater relief. Therefore, the Court will dismiss this action without prejudice.

I.    **Relevant Background**

On December 22, 2008, the Tribe filed suit against the NPS alleging that the NPS and Department of Interior improperly appropriated funds for the Loop Road Project. (*See* DE 1.) After the parties failed to settle

this matter at mediation, the Tribe filed an amended complaint which added another appropriations claim as well as a NEPA claim. (*See* DE 16 "Amended Complaint.") The Amended Complaint alleged that, if commenced, the Project would violate NEPA and harm the environment because NPS failed to conduct the required environmental assessment. (*See id.* ¶ 70.) On May 29, 2009, NPS moved to dismiss the Tribe's appropriations claims for lack of standing, which the Court granted, leaving only the Tribe's NEPA claim. (*See* DE 43.)

After NPS notified the Court of its intent to commence the Project on December 1, 2009, the Tribe moved for emergency injunctive relief, stating that "the moment the first shovel breaks the ground, as a matter of law the NPS will wreak irreparable harm upon the Everglades, this community and the Tribe." (*See* DE 67 at 1-2.) After expedited briefing on the motion, an extensive evidentiary hearing, and a thorough review of the record and applicable law, the Court notified the parties on November 25, 2009 that, while NEPA required NPS to produce a new environmental assessment ("EA"), the Tribe had not shown an immediate threat of irreparable harm necessary for preliminary injunctive relief. (*See* DE 92.) Due to the impending December 1, 2009 Project commencement date, the Court consolidated the Tribe's request for preliminary injunctive relief with a disposition on the merits and required the parties to file merits briefs to allow the Court to rule on the Tribe's entitlement to permanent injunctive relief. (*See id.*)

On November 30, 2009, NPS agreed to stay Project commencement until December 14, 2009 to allow the Court adequate time to render a final disposition on the Tribe's NEPA claim. (*See* DE 93.) Five days later, on December 4, 2009, NPS declared that the Project "will not proceed" until it has conducted a NEPA review. (*See* Ramos Decl. ¶ 3.) On the strength of its voluntary cessation, NPS moved to dismiss the case as moot. (*See* DE 94.)

**II.   Standards**

A. NEPA Review Requirements

"The object of NEPA is to require federal agencies to consider environmental values when making decisions and the initial responsibility of the federal agency is to determine the extent of the environmental impact." *Hill v. Boy*, 144 F.3d 1446, 1449-50 (11th Cir. 1998) (citation omitted). The relevant NEPA regulations dictate

that, prior to commencing an action, an agency must determine whether the action "is a major action with a significant effect." *Sierra Club v. U.S. Army Corps of Engineers*, 295 F.3d 1209, 1215 (11th Cir. 2002). This inquiry compels the agency to prepare an EA.[1] *See id.* "The EA should provide enough evidence and analysis to guide the agency to one of two conclusions: (1) a finding that the project will have a significant effect, or (2) a finding of no significant impact ("FONSI")." *Id.* If the agency finds that the project will have a significant efect, it must prepare an Environmental Impact Statement ("EIS"). *Id.* Absent such a finding, the agency must issue a FONSI, "which incorporates the EA and explains why the action will not have a significant effect on the human environment." *Id.*

### B. Mootness

A "voluntary cessation" of a party's objectionable conduct does not normally render a case moot. *Troiano v. Supervisor of Elections in Palm Beach County, Florida*, 382 F.3d 1276, 1282-83 (11th Cir. 2004) (citing *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). However, an exception to this general rule exists "when there is no reasonable expectation that the voluntarily ceased activity will, in fact, actually recur after the termination of the suit." *Troiano*, 382 F.3d at 1283 (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)). This exception matures into a rebuttable presumption that the objectionable behavior *will not* occur *if* the alleged perpetrator is *not* a private citizen, but a government actor. *Troiano*, 382 F.3d at 1283 (citing *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328-29 (11th Cir. 2004) ("[G]overnmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities"). The Government's assertion of mootness has been rejected "*only* when there is a substantial likelihood that the offending policy will be reinstated if the suit is terminated." *Troiano*, 382 F.3d at 1284 (emphasis in original) (citation omitted). Without such evidence, "there is simply no point in allowing the suit to continue . . . ." *Id.* at 1285.

### III. Discussion

NPS argues that there is no likelihood that the offending policy will be reinstated because the Project will

---

[1] At this stage, an agency may also determine that the action is subject to a Categorical Exclusion ("CE"), but such an exception is not relevant to this case. *See* 40 C.F.R. § 1508.4.

not commence until NEPA review is complete. The Tribe insists that mootness cannot be grounded on NPS's intention to complete NEPA review in the future and notes that the cases NPS proffers all involve proven remedial conduct by the Government. However, in this instance, the Tribe misconstrues the remedial conduct necessary to extinguish the parties' NEPA dispute.

As the Court made clear in its November 25, 2009 Notice, had NPS commenced Project construction on December 1, 2009 without competing an EA, it would have violated NEPA. (*See* DE 92.) NPS instead voluntarily halted the Project "until a final NEPA document has been completed." (*See* Ramos Decl. ¶ 3.) The crucial remedial admission here is not only NPS's commitment to conduct NEPA review, but more importantly its cessation of the Project until such review is complete. (*See id.*)

NPS's decision to halt the Project until it completes NEPA review leaves this Court with no opportunity to enforce NEPA dictates and no indication that the objectionable conduct – Project commencement without NEPA review – will recur. As such, a finding of mootness in this matter is consistent with the relevant case law. In *Troiano*, the plaintiffs sued Palm Beach County for failing to provide audio voting equipment for visually-impaired registered voters. *Troiano*, 382 F.3d at 1278. The Eleventh Circuit affirmed the dismissal for mootness because the requested audio components were made available in every voting precinct in the county for the upcoming elections. *Id.*; *accord Beta Upsilon Chi Upsilon Chapter at the University of Florida v. Machen*, 586 F.3d 908, 917-18 (11th Cir. 2009) (holding that the plaintiff's First Amendment claims were mooted after the University of Florida registered the plaintiff as a "Registered Student Organization"); *Jews for Jesus, Inc. v. Hillsborough County Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998) (stating that there was no meaningful relief left to provide after Tampa International Airport's literature distribution policies were changed to allow the plaintiffs to freely distribute religious literature).

By contrast, the situation in *Ouachita Watch League v. Jacobs*, 463 F.3d 1163 (11th Cir. 2006) is distinguishable. In that case, the U.S. Forest Service managed several projects whose status could not be determined and the plaintiff provided evidence showing that the projects continued to be governed by management plans which violated NEPA. *Id.* at 1175. Unlike *Ouachita*, this case only involves one project – the Loop Road Rehabilitation Project – which NPS stayed pending NEPA review completion. Further, unlike the plaintiff in

*Ouachita*, the Tribe has proffered no evidence to show that the Project will commence if this case is dismissed. The Tribe suggests that the NPS has acted in bad faith throughout this litigation. While the NPS could be criticized for its lack of transparency with Loop Road stakeholders such as the Tribe, its commitment to halt the Project is clear and the Tribe does not point to any specific evidence which would undermine the NPS's pledge to this Court.

Finally, the Tribe argues that NPS fails to specify what NEPA review it will conduct. To the contrary, NPS Superintendent Ramos vows to produce a "final NEPA document," prior to commencing Project construction. (*See* Ramos Decl. ¶ 3.) While the Tribe might be more comfortable if NPS specified that it would produce an EIS, NPS cannot be required to guarantee, ex ante, whether the NEPA review will result in a FONSI or an EIS. *See, e.g., Sierra Club*, 295 F.3d at 1215 (stating that NEPA review may result in EIS or FONSI). Thus, NPS's charge to produce a "final NEPA document" is adequate. What is more, NPS's counsel explicitly represents that NEPA review will consist of an EA. (*See* DE 97 at 2.) In any event, NPS's commitment to produce a final NEPA document satisfies this Court that the NEPA dispute between the parties has come to an end.

### IV. Conclusion

For the reasons discussed above, the Court will grant the Government's motion to dismiss for mootness and dismiss this action without prejudice. Accordingly it is hereby

ORDERED that

(1) The Government's Motion to Dismiss for Mootness [DE 94] is GRANTED. This action is DISMISSED WITHOUT PREJUDICE.

(2) All pending motions are DENIED AS MOOT.

(3) This case is CLOSED.

DONE and ORDERED in Miami, Florida, this 24th day of February, 2010.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: Magistrate Judge O'Sullivan
Counsel of Record